T.C. Summary Opinion 2010-57


UNITED STATES TAX COURT


OSMAN AND ELMAS SIRIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23780-08S.                    Filed May 3, 2010.


<u>Arsen Kashkashian, Jr.</u>, for petitioners.

<u>Kathleen K. Raup</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,
and this opinion shall not be treated as precedent for any other
case.  Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the year in issue,

and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are whether petitioners overreported their income for 2005 and whether they are subject to the accuracy-related penalty under section 6662(a).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. When petitioners filed their petition, they resided in New Jersey.

On a timely filed return for 2005, petitioners reported on Schedule C, Profit or Loss From Business, $48,389 of gross receipts for Osman Sirin's (petitioner) painting contractor business. Petitioners also reported $15,774 of cost of goods sold (CGS) and business expenses of $26,201.

Petitioners are natives of Turkey and do not speak, write, or read, the English language. They arrived in the United States around 2002. Petitioner began looking for work upon his arrival to the United States when a friend introduced him to Mustafa Yagli (Mr. Yagli). Mr. Yagli operated a construction business and petitioner began working for him as a painter. In remuneration for his work, petitioner received eight check payments from Mr. Yagli in 2005 totaling $20,763.

Mr. Yagli issued in petitioner's name a Form 1099-MISC, Miscellaneous Income, reporting $48,389 of income for 2005. There is no evidence that petitioner contested the amount as reported on the Form 1099-MISC.

Because petitioners had not previously filed a Federal income tax return in the United States, Mr. Yagli and his wife (the Yaglis) assisted petitioners with the preparation of their 2005 return. The Yaglis submitted petitioners' 2005 Federal income tax information to a tax return preparer[1] and upon its completion, instructed petitioners to sign the completed return. Petitioners did not understand their return and trusted that the Form 1099-MISC issued by the Yaglis correctly reflected petitioner's income and that the preparer correctly entered the information on their return. Petitioners then signed the completed return.

Respondent issued to petitioners a notice of deficiency disallowing: (1) Job expenses of $15,777; (2) CGS of $15,774; and (3) $7,394 for the rental or lease of vehicles. Respondent further determined that petitioners were subject to the accuracy-related penalty under section 6662(a) for 2005. Petitioner admits that he did not have job expenses, CGS, or rental expenses

---

[1]There was some confusion over who prepared petitioners' return. At one point the name "Mr. Erdogan" was mentioned, and petitioner seemed to believe that the Yaglis may have had Mr. Erdogan prepare their 2005 return.

for 2005.  Petitioner instead alleges that the amount reported on the Form 1099-MISC was in excess of his actual income for 2005.

## Discussion

### I.  Burden of Proof

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.[2]  Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Under section 6201(d), the burden of production may shift to the Commissioner where an information return, such as a Form 1099, serves as the basis for a deficiency determination.  If a taxpayer asserts a reasonable dispute with respect to any item of income reported on a third-party information return and he has fully cooperated[3] with the Commissioner, the Commissioner will have the burden of producing reasonable and probative information concerning the item of income in addition to the information return.

---

[2]Petitioners have not claimed or shown that they meet the requirements under sec. 7491(a) to shift the burden of proof to respondent as to any factual issue relating to their liability for tax.

[3]There is no evidence that petitioner has failed to fully cooperate, and respondent does not allege petitioner failed to fully cooperate.

While respondent did not adjust petitioner's income as reported by petitioner and as reported on the Form 1099-MISC, petitioner has raised a reasonable dispute as to the Form 1099-MISC information return. See sec. 6201(d).

Respondent has satisfied his burden by producing the testimony of the Yaglis and their receipts, as discussed, infra.

II. Petitioners' Reported Income

The issue is whether petitioners overreported gross receipts on their 2005 return. The gross receipts reported on that return are admissions that must be overcome by cogent evidence. See Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989); Lare v. Commissioner, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975); Kaltreider v. Commissioner, 28 T.C. 121, 126 (1957), affd. 255 F.2d 833 (3d Cir. 1958). Petitioner disputes that he received cash payments from Mr. Yagli in addition to the check payments he received in 2005.[4]

Mr. Yagli testified that he paid petitioner in cash and by check in 2005. He explained that each time he paid petitioner in cash he would draft a receipt indicating the work that petitioner performed, the date of payment, and the amount of payment.[5] Mr.

_____

[4]The checks petitioner received were dated 1/31/05, 2/18/05, 3/31/05, 6/2/05, 6/29/05, 8/30/05, 10/28/05, and 12/22/05.

[5]Mr. Yagli provided 12 copies of cash receipts. The receipts are numbered 251251, 251255, 251256, 251257, 251260, 251261, 251262, 251263, 251265, 251267, 251269, and 251273.

Yagli testified that he drafted these receipts solely for his business records and that it was not his practice to provide copies of the receipts to the payee.[6]

Mrs. Yagli corroborated her husband's testimony that he paid petitioner cash in 2005, but she alleged that she was the one who drafted the cash receipts. She further testified, contrary to the testimony of her husband, that it was her practice to provide a copy of each receipt to the payee, namely, petitioner.

Petitioner testified that he never received cash payments in 2005 and that he was never given a receipt indicating that he received cash payments. Petitioner only saw these receipts for the first time after this case had progressed beyond the examination process.

The validity of the cash receipts is questionable. There is no persuasive evidence that copies of the receipts were given to petitioner in 2005 or that petitioner received cash payments in 2005.

One receipt was actually dated 4/15/08, the date that the Yaglis submitted the receipts to the IRS. Respondent argues that the Yaglis made an honest mistake by inputing the date 4/15/08 on one of the receipts because that was the day they faxed the

_____

[6]When respondent began an examination of petitioners' 2005 tax year, Mr. Yagli provided copies of these receipts to respondent. Mrs. Yagli admitted that at this time, respondent was also conducting an audit of her husband's business; however, it is unclear which tax year(s) were being audited.

receipts.  Respondent interpolates that because the invoice is contained between two invoices dated in 2005, that it must be an invoice from 2005.  Mr. Yagli testified that he kept the receipts for his records only, but Mrs. Yagli testified that she provided copies of the receipts to the payees.  The Yaglis' inconsistent testimony casts doubt on the validity of these receipts.[7]

Petitioner did not sign any of the cash receipts acknowledging receipt of cash payments, nor was there any other acknowledgment that the receipts were provided to him.  Petitioner testified that he did not receive any cash payments from Mr. Yagli in 2005.  Although the Form 1099-MISC showed compensation of $48,389, the Court cannot determine whether petitioner saw or understood the document.  The Court finds petitioner's testimony credible and the evidence persuasive and sufficient to support a finding that petitioner received only $20,763 in the form of check payments for his work for Mr. Yagli in 2005.

---

[7]Respondent attempts to point out inconsistencies in petitioner's testimony.  Respondent notes that it is unlikely that petitioner did not receive cash payments from Mr. Yagli because petitioner's admission that he worked "continuously" for Mr. Yagli in 2005 shows that no pay gap should have lasted for 2 months.  But Mr. Yagli admitted that it was possible that there were times when petitioner did not work for 2 weeks at a time.

Respondent further asserts that petitioner was evasive and unresponsive during his testimony when asked whether he received cash payments in 2005.  But petitioner unequivocally testified that he did not receive cash payments in 2005.

III.  Accuracy-Related Penalty

Respondent determined that petitioner is liable for an accuracy-related penalty under section 6662(a).  Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to any one of various factors, including negligence or disregard of rules or regulations.  See sec. 6662(b)(1). "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure to keep adequate books and records or to substantiate items properly.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Under section 7491(c), respondent has the burden of production with respect to the accuracy-related penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Section 6664(c)(1) provides an exception to the section 6662(a) penalty if it is shown that there was reasonable cause for any portion of an underpayment and the taxpayer acted in good faith.  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess his proper tax liability.  Id.  Circumstances that may indicate reasonable cause and good faith include an honest

misunderstanding of fact or law that is reasonable in view of the taxpayer's experience, knowledge, and education. Id.

Petitioners have demonstrated reasonable cause and an honest misunderstanding that is reasonable in view of their knowledge of and experience with their Federal income tax reporting requirements. Petitioners did not read, write, or speak English, and 2005 was the first year for which they filed a U.S. Federal income tax return.

In addition, due to petitioners' inexperience with U.S. Federal income tax returns and their lack of understanding of the English language, petitioner's boss, Mr. Yagli, and his wife admit that they took part in the preparation of petitioners' 2005 Federal income tax return. The Yaglis then instructed petitioners to sign the completed tax return.

Petitioner testified that although they did not understand their return, he and his wife signed it because they were told that they were required to file their tax return. When asked whether he gave any expense information to the tax return preparer, petitioner testified that he did not know because Mr. Yagli was "giving the figures." Petitioner's understanding was that Mr. Yagli gave all the figures to the tax return preparer to complete their return.

Given their lack of knowledge and understanding of the tax laws of the United States and the reporting requirements, the

Court finds that petitioners acted in good faith.  Accordingly, respondent's determination of a section 6662 accuracy-related penalty is not sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.[8]

---

[8]Whether petitioners are subject to an increase in tax because of the concession that they did not have job expenses, CGS, or rental expenses for 2005, as determined by respondent, will be computed under Rule 155.